858 A.2d 571 (2004)
372 N.J.Super. 333
Jessica Leigh SHORT, individually and as Administratrix ad Prosequendum of the Estate of Candice Austin Short, Plaintiff-Respondent;
v.
John SHORT, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued September 29, 2004.
Decided October 13, 2004.
*572 Paul Casteleiro, Hoboken, argued the cause for appellant.
Daniel S. Jahnsen, Shrewsbury, argued the cause for respondent (Bolan Jahnsen Ball & Reardon, attorneys for respondent; Mr. Jahnsen, of counsel; Vicki Shea-Connolly, on the brief).
Before Judges CONLEY, BRAITHWAITE and LISA.
The opinion of the court is delivered by
CONLEY, P.J.A.D.
This appeal raises the issue of whether the amendment in 2000 to the Wrongful Death Act, which eliminated the two-year statute of limitations for wrongful death claims arising from a murder, aggravated manslaughter or manslaughter, applies retroactively to allow plaintiff to litigate her claim against defendant, her father, *573 for the murder of her mother. Plaintiff's wrongful death lawsuit was brought twenty years after her mother's death. Defendant moved to dismiss on statute of limitations grounds. After the motion was denied, a directed verdict on liability was entered and the matter proceeded before a jury on the issue of damages. The jury ultimately awarded plaintiff $542,000 in damages. With prejudgment interest, a final judgment for $596,415.71 was entered on October 2, 2003. We affirm.
The pertinent facts are as follows. On June 22, 1981, defendant's wife, Candice Austin Short, was found murdered in her motor vehicle in a parking lot in the Willowbrook Mall in Wayne, New Jersey. State v. Short, 131 N.J. 47, 50, 618 A.2d 316 (1993). Decedent and defendant had one child, plaintiff Jessica Leigh Short, who was born on March 6, 1979.
Defendant was, eventually, indicted and charged with the murder of his wife in February 1988. He was convicted by a jury in early 1989 and was sentenced to thirty years imprisonment with a fifteen year disqualifier. On appeal, the conviction was reversed. Id. at 63, 618 A.2d 316. Defendant was retried in October 1994. He was again convicted and sentenced to thirty years imprisonment with a fifteen-year disqualifier. His conviction was affirmed on appeal in an unreported decision and his petition for certification was denied. State v. Short, 143 N.J. 325, 670 A.2d 1066 (1996). Defendant is currently incarcerated at Riverfront State Prison.
Prior to the amendment to the Wrongful Death Act, plaintiff, a minor at the time of her mother's death, had, at the most, until March 6, 1999, to file the action. See LaFage v. Jani, 166 N.J. 412, 430-31, 766 A.2d 1066 (2001). She did not do so. In August 1999, defendant's mother executed a will with defendant as her sole beneficiary. She did not change her will after the 2000 amendment removing the time-bar.
Defendant's mother died in March 2001. Her estate includes two real estate properties in Monmouth and Ocean counties. Five months after her grandmother's death, plaintiff filed suit and simultaneously filed a complaint for a prejudgment writ of attachment to all proceeds of the estate, including the two properties. An order was thereafter entered attaching the estate's assets, against which, save the issue of retroactivity, plaintiff may now execute her judgment.
When plaintiff's cause of action arose upon the murder of her mother, N.J.S.A. 2A:31-3 provided that "[e]very action brought under this chapter shall be commenced within 2 years after the death of decedent, and not thereafter." As amended, the Act now provides:
Every action brought under this chapter shall be commenced within two years after the death of the decedent, and not thereafter, provided, however, that if the death resulted from murder, aggravated manslaughter or manslaughter for which the defendant has been convicted, found not guilty by reason of insanity or adjudicated delinquent, the action may be brought at any time.

[N.J.S.A. 2A:31-3 (emphasis added).]
The Legislature's rationale for this amendment and the desire to give it full retroactive effect, is clearly expressed in the Assembly Judiciary Committee, Statement to A.1934 (Nov. 17, 2000) thusly:
The committee discussion also emphasized the difficult task that is required under the current law of a person whose loved one has been murdered to consider commencing a wrongful death action in two years time. When the focus is on a criminal investigation and possible trial or plea agreement it appears to be almost impossible to consider pursuing a *574 civil suit during that period. While certainly any person who has lost a loved one under accidental circumstances may face difficulty going forward with an action, the committee felt that a murder or manslaughter victim's family may be particularly emotionally fragile and their attention too fragmented until the criminal matter has reached some resolution to even begin considering a civil suit. Their attention may simply be diverted with the aspects of the criminal case. Eliminating the statute of limitations for these wrongful death suits will preserve the right of murder and manslaughter victims' families to sue at some future date. The committee also amended the effective date to make clear their intent that the bill should apply to persons who wish to bring the wrongful death action where the murder or manslaughter occurred prior to the bill's taking effect.

[Emphasis added.]
The amendment specifically provides:
This act shall take effect immediately and shall apply to any action filed on or after the effective date including actions where the murder, aggravated manslaughter or manslaughter occurred prior to the effective date of this act.
[L. 2000, c. 157, § 2.]
While we generally favor prospective application of statutes, an exception exists when the Legislature evidences a clear intent to retroactively apply the statute. Twiss v. State Dep't of Treasury, 124 N.J. 461, 467, 591 A.2d 913 (1991). Here, there can be no doubt that the Legislature intended the abolishment of the procedural time-bar to apply retroactively.
But defendant contends that this legislatively created retroactive application is unconstitutional because it revives causes of action that would have otherwise been barred, thereby depriving him of a "vested right," relying primarily upon State v. Standard Oil Co., 5 N.J. 281, 296-97, 74 A.2d 565 (1950), aff'd, 341 U.S. 428, 71 S.Ct. 822, 95 L.Ed. 1078 (1951) (Standard Oil), and Sarasota-Coolidge Equities II, v. S. Rotondi & Sons, Inc., 339 N.J.Super. 105, 113-14, 770 A.2d 1264 (App.Div.2001) (Sarasota). We disagree that either Standard Oil or Sarasota are apposite.
First, we presume the Legislature "`acted with existing constitutional law in mind and intended the act to function in a constitutional manner.'" NYT Cable TV v. Homestead At Mansfield, Inc., 111 N.J. 21, 26, 543 A.2d 10 (1988). Second, retroactive amendments to statutes of limitations resulting in a revival of an otherwise barred claim are not per se unconstitutional. See Twiss v. State Dep't of Treasury, supra, 124 N.J. at 467, 591 A.2d 913; Panzino v. Continental Can Co., 71 N.J. 298, 305, 364 A.2d 1043 (1976); D.J.L. v. Armour Pharmaceutical Co., 307 N.J.Super. 61, 84-85, 704 A.2d 104 (Law Div.1997). Third, both Standard Oil and Sarasota, which held retroactive resurrection of otherwise time-barred causes of action to be unconstitutional, are limited to "a claim sounding in contract." Panzino v. Continental Can Co., supra, 71 N.J. at 305, 364 A.2d 1043. See Twiss v. State Dep't of Treasury, supra, 124 N.J. at 469-70, 591 A.2d 913.
Defendant here has no contractual claim that he has lost by virtue of the removal of the procedural bar to plaintiff's lawsuit. His complaint is that his inheritance will now be expended on his daughter's monetary award against him, instead of being available to him upon his release from prison. But at the time of the amendment, defendant had nothing more than an expectation of an inheritance. Simply put, at the time of the amendment in 2000, defendant did not have a "present fixed interest *575 which ... should be protected against arbitrary state action." Pennsylvania Greyhound Lines, Inc. v. Rosenthal, 14 N.J. 372, 384, 102 A.2d 587 (1954). See Twiss v. State Dep't of Treasury, supra, 124 N.J. at 470, 591 A.2d 913. Moreover, because the Wrongful Death Act time-bar is procedural, LaFage v. Jani, supra, 166 N.J. at 434, 766 A.2d 1066, passage of the limitation period barred only a procedural remedy, not the substantive right, id. at 421-22, 438, 766 A.2d 1066. While, then, plaintiff's procedural remedy, i.e., litigation, might have been absent prior to 2000, her cause of action always remained. Thus, defendant's expectation or hope that the statute of limitations would bar a tort suit against him arising from his criminal conduct is not a constitutionally protected interest. Panzino v. Continental Can Co., supra, 71 N.J. at 304, 364 A.2d 1043.
More to the point, the focus of our constitutional inquiry is, now, much broader than whether a party has lost a protectible right by way of a retroactive application of a statute altering a time-bar. The constitutional inquiry, rather, is whether the retroactive legislation "`is supported by a legitimate legislative purpose furthered by rational means.'" Nobrega v. Edison Glen Assocs., 167 N.J. 520, 543, 772 A.2d 368 (2001) (quoting Pension Ben. Guar. Corp. v. R.A. Gray & Co., 467 U.S. 717, 729, 104 S.Ct. 2709, 2717-18, 81 L.Ed.2d 601, 611 (1984)).
The Legislature's concern over the compensatory rights of a murder victim's surviving family, and its obvious purpose in enacting the amendment to ensure the right of such family to recover damages from the criminal/tortfeasor, indisputably is a legitimate legislative concern and a legitimate legislative purpose. The means by which that concern and that purpose are furthered to their fullest extent, i.e., retroactive removal of the procedural time-bar, is entirely rational. The Assembly Statement emphasized that the "task that is required under the current law of a person whose loved one has been murdered to consider commencing a wrongful death action in two years time" is "difficult." Statement to A.1934, supra. The Committee recognized that during the time a criminal investigation is on-going and through to completion, whether it be by way of a plea or a jury trial, it is "almost impossible to consider pursuing a civil suit...." Ibid. It further observed that a murder or manslaughter victim's family "may be particularly emotionally fragile and their attention too fragmented until the criminal matter has reached some resolution to even begin considering a civil suit." Ibid. The Legislature was obviously aware that criminal proceedings often take many years before they are resolved and was obviously aware that a number of murder or manslaughter victims' families may have had otherwise viable wrongful death causes of action heretofore barred. Given the legitimate legislatively expressed concerns for such victims, it is not irrational for the Legislature to purposefully choose to give the amendment as broad a retroactive effect as it could,[1] particularly when it obviously knew that no statute of limitations exists for murder, aggravated manslaughter and manslaughter prosecutions. N.J.S.A. 2C:1-6(a).
Finally, we briefly address the equitable concept of "manifest injustice." It *576 is an alternative, non-constitutional basis for precluding retroactive application under limited circumstances. Nobrega v. Edison Glen Assocs., supra, 167 N.J. at 546, 772 A.2d 368. It has been said that:
[T]he essence of this inquiry is whether the affected party relied, to his or her prejudice, on the law that is now to be changed as a result of the retroactive application of the statute, and whether the consequences of this reliance are so deleterious and irrevocable that it would be unfair to apply the statute retroactively.
[Gibbons v. Gibbons, 86 N.J. 515, 523-24, 432 A.2d 80 (1981).]
Reliance on the part of the party challenging the law is, then, the critical element. Nobrega v. Edison Glen Assocs., supra, 167 N.J. at 547, 772 A.2d 368.
Defendant does not identify any reliance placed upon the previous time-bar. As we have said, his belief that he could no longer be sued could be no more than a hope or expectation. That is hardly the type of reliance that would support equitable relief from an otherwise constitutional retroactive lifting of the time-bar. To the extent defendant would assert his mother's act of bequeathing her estate to him as reliance entitled to protection, the amendment was enacted before her death. She had an opportunity to alter her will and did not do so. Perhaps she knew that her granddaughter could now sue her son and perhaps that is why she did not alter her will. In any event, it can hardly be considered manifestly unjust that the family's assets will now be available to recompense the wronged family member at the expense of the family member who caused that wrong.
Affirmed.
NOTES
[1] In this respect, we reject defendant's argument that the Legislature intended only to resurrect causes of action that arose prior to the amendment but criminal proceedings of which had not yet been resolved and which had not yet been time-barred. The retroactive provision of the amendment is, simply, not so limited. Neither is defendant's interpretation constitutionally mandated.